# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Case No. 15-31901-LTB |
| GCC-CHASE, LLC, | ) |
| | ) Chapter 11 |
| Debtor. | ) |
| _____ | ) |
| | ) |
| | ) |
| PROVIDENCE REAL ESTATE VENTURE, | ) |
| LLC, | ) |
| | ) |
| Plaintiff, | ) Adv. Proc. No. 16-_____-LTB |
| | ) |
| v. | ) |
| | ) |
| GCC-CHASE, LLC; | ) |
| GCC-COURTYARD, LLC; | ) |
| GCC-LANDINGS, LLC; | ) |
| GCC-SHARON RIDGE, LLC; | ) |
| GREAT CIRCLE CAPITAL, LLC; | ) |
| CHRISTOPHER NEEDHAM; | ) |
| GEORGE W. COURLAS; and | ) |
| JAMES M. THORBURN. | ) |
| | |
| Defendants. | |
| _____ | |

## ADVERSARY COMPLAINT FOR DECLARATORY JUDGMENT
## AND INJUNCTIVE RELIEF

Plaintiff, PROVIDENCE REAL ESTATE VENTURE, LLC ("**Providence**"), by and through its undersigned counsel, hereby sues Defendants, GCC-CHASE, LLC, GCC-COURTYARD, LLC, GCC-LANDINGS, LLC, GCC-SHARON RIDGE, LLC, GREAT CIRCLE CAPITAL, LLC, CHRISTOPHER NEEDHAM, GEORGE COURLAS, and JAMES THORBURN, and alleges as follows:

1

**PARTIES, JURISDICTION AND VENUE**

1.      Providence is a Florida limited liability company with its principal place of business in Orlando, Florida.

2.      GCC-Chase, LLC ("**GCC-Chase**"), a North Carolina limited liability company, purportedly filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on December 1, 2015, Case No. 15-31901-LTB.

3.      GCC-Courtyard, LLC ("**GCC-Courtyard**"), a North Carolina limited liability company, purportedly filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on December 1, 2015, Case No. 15-31902-LTB.

4.      GCC-Landings, LLC ("**GCC-Landings**"), a North Carolina limited liability company, purportedly filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on December 1, 2015, Case No. 15-31903-LTB.

5.      GCC-Sharon Ridge, LLC ("**GCC-Sharon Ridge**"), a North Carolina limited liability company, purportedly filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on December 1, 2015, Case No. 15-31904-LTB.

6.      Collectively, GCC-Chase, GCC-Courtyard, GCC-Landings, and GCC-Sharon Ridge shall be referred to herein as the "**GCC Entities**" or the "**Putative Debtors**."

7.      GCC-Chase is a single purpose entity whose sole purpose is ownership and management of a 132-unit apartment complex located at 2728 Commonwealth Ave., Charlotte, North Carolina 28205.

8.      GCC-Courtyard is a single purpose entity whose sole purpose is ownership and management of a 54-unit apartment complex located at 5312 Montague St., Charlotte, North Carolina 28205.

9. GCC-Landings is a single purpose entity whose sole purpose is ownership and management of a 125-unit apartment complex located at 711 Farmhurst Drive, Charlotte, North Carolina, 28217.

10. GCC-Sharon Ridge is a single purpose entity whose sole purpose is ownership and management of a 75-unit apartment complex located at 1937 Sharon Road West, Charlotte, North Carolina 28210.

11. Collectively, the properties owned by each of the GCC Entities shall be referred to herein as the "**GCC Properties**."

12. Defendant, Great Circle Capital, LLC ("**Great Circle**"), is a North Carolina limited liability company with its principal place of business in Indian Trail, North Carolina. At the time of the underlying transaction described herein, Great Circle represented that it was the 100% owner and manager of the GCC Entities, and each of the GCC Entities list Great Circle as their 100% owner and manager in their Statements of Financial Affairs.

13. Defendant, Christopher Needham ("**Needham**"), is an individual resident of the State of North Carolina.

14. Defendant, George Courlas ("**Courlas**"), is an individual resident of Washington.

15. Defendant, James Thorburn ("**Thorburn**"), is an individual resident of Nebraska.

16. This Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334.

17. Venue is proper pursuant to 28 U.S.C. § 1409.

18. This adversary proceeding arises out of and is related to GCC Entities' bankruptcy cases under Title 11, and therefore this Court has jurisdiction pursuant to 28 U.S.C. §1334.

19. This Court has personal jurisdiction over the Defendants pursuant to Rule 7004(f) of the Federal Rules of Bankruptcy Procedure.

20. The causes of action set forth herein involve the administration of the Putative Debtors' bankruptcy estates pursuant to 28 U.S.C. 157(b)(2)(A) and the determination of the equity security holder relationship pursuant to 28 U.S.C. 157(b)(2)(O), and therefore constitute core proceedings.

### GENERAL ALLEGATIONS

#### *Prior Management and Ownership of Great Circle*

21. Prior to the transaction described below, the following parties were members of Great Circle: (i) Needham; (ii) Courlas; (iii) GCH2, LLC ("**GCH2**"); and (iv) Keystone, LLC ("**Keystone**").

22. GCH2 also acted as Manager of Great Circle.

23. GCH2 was, in turn, managed by Needham.

24. Keystone was owned and/or managed by Thorburn.

25. At the time of the transaction described below, each of the GCC Properties was encumbered by a security interest in favor of Arbor Commercial Funding, LLC, which interests were subsequently assigned and transferred to Fannie Mae (the "**Fannie Mae Loans**").

#### *Great Circle Equity Sale to Providence*

26. Providence and its owners and affiliated entities are in the business of purchasing, improving and managing residential apartment complexes.

27. To that end, Providence entered into a Purchase and Sale Agreement dated December 15, 2012 (the "**Purchase Agreement**") with Great Circle and Needham. A true and correct copy of the Purchase Agreement is attached hereto as **Exhibit 1.**

28. Needham was authorized to enter and complete the Purchase Agreement as the authorized party for Great Circle pursuant to a Certified Resolution executed by all relevant

parties associated with Great Circle. A true and correct copy of the Certified Resolution is attached hereto as **Exhibit 2.**

29. In the Purchase Agreement, Great Circle represented that it was the 100% owner of the GCC Entities, referred to in the Purchase Agreements and herein as Great Circle's "**Membership Interests.**" *See* Ex. 1 at pg 1.

30. Pursuant to Purchase Agreement, Providence agreed to purchase and Great Circle agreed to sell 75% of Great Circle's Membership Interests in the GCC Entities free and clear of encumbrance of every kind, character, and description, for a total purchase price of $2,200,000.00, payable in installments as set forth in the Purchase Agreement. *See* Ex. 1 at pg 5.

31. Providence paid an initial deposit to Great Circle in the amount of $200,000 on or about November 14, 2012.

32. The closing of the Purchase Agreement took place on or about December 21, 2012, at which time Providence paid an additional $900,000 to Great Circle in accordance with paragraph 2.2 of the Purchase Agreement.

33. Contrary to the Purchase Agreement, however, Great Circle delivered to Providence at the closing an Assignment of Membership Interest and Release Agreement (the "**Assignment**") transferring 75% ownership in Great Circle to Providence instead of 75% ownership in the GCC Entities as required by the Purchase Agreement. A true and correct copy of the Assignment is attached hereto as **Exhibit 3.**

34. When pressed about this change, Needham assured Providence it was a distinction without a difference because Great Circle owned 100% of the GCC Entities.

35. Along with the Purchase Agreement and Assignment, GCH2 and Needham delivered to Providence a Form Notice of Resignation whereby GCH2, LLC resigned its position as "manager" of Great Circle (the "**G2H2 Resignation**"), effective upon closing of the Purchase

Agreement, clearing the way for Providence to take full control of all operations of Great Circle, the GCC Entities, and the GCC Properties. A true and accurate copy of G2H2 Resignation is attached hereto as **Exhibit 4**.

36. Also at closing, Needham and Great Circle provided Providence with a series of Membership Assignment and Redemption Agreements (the "**Redemption Agreements**"), documenting and demonstrating the transfer of membership interests to and from Great Circle as follows:

    (a) Great Circle redeemed 72.45% of its ownership from GCH2 for unspecified price;

    (b) Great Circle redeemed 8.65% of its ownership from Courlas for unspecified price;

    (c) Great Circle redeemed 12.39% of its ownership from Keystone Properties, LLC for $214,683.

True and correct copies of the Redemption Agreements are attached hereto as **Exhibit 5**.

37. As a result of the Redemption Agreements and Assignment, the only remaining interests in Great Circle were held by Providence (75%) and Needham (25%), as specifically acknowledged in the Assignment.

### *Operation and Control of Great Circle, the GCC Entities, and the GCC Properties*

38. In conjunction with the closing of the Purchase Agreement, Providence became the Manager of Great Circle.

39. In conformance with the rights granted in the Purchase Agreement, and with the full knowledge, consent and participation of Great Circle and its former members and managers, including Needham, Courlas, and Thorburn, Providence assumed full control and management of Great Circle, the GCC Entities, and the GCC Properties beginning in January 2013.

40. Providence directed North 44 Property Management, Inc. ("North 44") to take over the duties of managing and operating the Properties. Each of the GCC Entities and North 44 executed a Property Management and Construction Management Fee Agreement, effective January 2, 2013. True and accurate copies of the Property Management and Construction Management Fee Agreements are attached hereto as **Exhibit 6**.

41. Consistent with the Management Agreements, and with Providence's rights as 75% equity owner of the GCC Entities and/or Great Circle, Providence, North 44, and others acting on behalf of Providence or at its direction, provided, among other things:

    (a) Leasing and marketing services;

    (b) Maintenance, rehabilitation, and construction, including cleaning, painting, decorating, plumbing, carpentry, grounds care, and such other maintenance and repair work as was necessary;

    (c) Utilities and other services, including water, electricity, gas, fuel, oil, sewage and trash disposal, vermin extermination, decoration of common areas, laundry facilities, telephone services, and other services as necessary;

    (d) Bookkeeping and financial services, including opening vendor and utility accounts, opening bank accounts, and collecting rent;

    (e) Payment of debts, including vendors, liens, and the Fannie Mae Loans;

    (f) Expenditure of capital improvements.

42. Additionally, consistent with the Management Agreements, and with Providence's rights and obligations as 75% equity owner of the GCC Entities and/or Great Circle, Providence, North 44, and others acting on behalf of Providence or at its direction, handled the business affairs of Great Circle and the GCC Entities, including without limitation, the following:

    (a) Working capital financing, including arranging for the funding of working capital shortfalls as necessary and incurring financing costs in connection therewith;

    (b)    Capital expenditure financing, including arranging for the funding of capital expenditure programs as necessary and incurring financing costs in connection therewith; and

    (c)    Providing covenants and guaranties necessary to obtain debt financing, as necessary.

*Prior Ownership Attempts to Renege on the Deal*
*and Forcibly Takes Control of GCC Properties*

43.    After the $1.1 million was distributed to Great Circle's former members, and after Providence assumed control over Great Circle, the GCC Entities, and GCC Properties, Providence uncovered a series of alleged problems and misrepresentations concerning the transaction, as formalized in an email from Courlas on September 27, 2013:

    (a)    Thorburn, as manager of Keystone, allegedly rescinded Keystone's redemption agreement with Great Circle.

    (b)    Courlas, Needham, and GCH2 threatened to rescind their redemption agreements with Great Circle unless Providence negotiated and paid additional extorted amounts for each agreement;

    (c)    Fannie Mae had not agreed to the management transfer of the GCC Properties; and

    (d)    Additional demands for money under alleged "reconciliations" for prepaid rent, security deposits, open aged accounts payable and repairs

A true and correct copy of Courlas' September 27, 2013 email is attached hereto as **Exhibit 7.**

44.    Courlas sent a follow up email on October 6, 2013 setting an arbitrary new purchase price of $3,284,814 (more than a million dollars more than the purchase price in the Purchase Agreement), and discussing a new "closing" and "purchase agreement," ignoring that the transaction had closed on December 21, 2012. A true and correct copy of the October 6, 2013 email is attached hereto as **Exhibit 8**.

45. Notwithstanding the disputes, Providence continued its management and control of the GCC Entities and GCC Properties with the full knowledge, consent and participation of Great Circle, Needham, Courlas, Thorburn, and others.

46. Providence also tendered payment of the remaining $1,100,000 due under the Purchase Agreement, but that payment was rejected in conjunction with the demand to renegotiate the terms of the Purchase Agreement.

47. Instead, inexplicably and without notice of default as required by section 2.6 of the Purchase Agreement, in September 2014, Needham, Courlas and Thorburn enlisted local law enforcement officials to physically remove Providence and North 44 representatives from the GCC Properties, claiming Providence had no ownership in the GCC Entities.

48. In an attempt to validate their actions, on or about September 24, 2014, Needham and Courlas conducted a clandestine meeting to pass a resolution purportedly on behalf of Great Circle attempting to position Courlas and Needham as new managers of Great Circle in charge of the GCC Entities (the "Great Circle Resolution"). A true and accurate copy of the alleged Great Circle Resolution is attached hereto as **Exhibit 9.** At the time, however, neither Courlas nor Needham had actual authority to enter into the Great Circle Resolution, and therefore it was without legal effect.

49. Thereafter, Needham, Courlas and Thorburn, or entities that they control, have purported to manage the GCC Entities and GCC Properties to the exclusion of Providence, collected rents and taken over bank accounts, changed locks and pass codes, converted any and all profits, and trespassed on the GCC Properties.

50. Neither Great Circle, Needham, Courlas nor Thorburn have returned Providence's payment of $1.1 million under the Purchase Agreement, and have also failed and refused to pay

9

for the capital improvements, management services, payment of debt, and other expenditures made by Providence, on Providence's behalf, or at Providence's direction.

### *The Bankruptcy Filings*

51. On December 1, 2015, without any consent or approval from Providence, the GCC Entities purportedly filed for Chapter 11 Bankruptcy protection.

52. Each of the GCC Entities' Petitions are signed by Courlas, purportedly as Manager of the respective Putative Debtor. Along with each of the GCC Entities' filings, Courlas executed a Corporate Resolution, also purportedly as the Manager. At no point did Courlas disclose to this Court that he lacked any corporate authority over the GCC Entities and was acting *ultra vires*.

53. In the GCC Entities' Statements of Financial Affairs, the Putative Debtors list Great Circle as their only Manager.

54. In accordance with the Assignment, Providence is the majority owner and Manager of Great Circle. Yet, Courlas has withheld from this Court the actual corporate ownership and control that is the only lawful corporate authority over the GCC Entities.

55. Instead, Courlas has falsely contended that the Purchase Agreement with Providence had been "aborted" and Great Circle, through the various individuals and entities described herein, retained control over the GCC Entities.

56. Providence has retained counsel to prosecute this action and is obligated to pay reasonable fees and costs for its services.

## COUNT I
## DECLARATORY JUDGMENT

57. Providence hereby incorporates and realleges paragraphs 1 through 56 as if fully restated herein.

10

58. This is an action for declaratory relief against the Defendants pursuant to 28 U.S.C. §§2201 and 2202, 11 U.S.C. §§1105, 365, 506, and 541, Rule 57 of the Federal Rules of Civil Procedure, and Rule 7001(9) of the Federal Rules of Bankruptcy Procedure.

59. There is a bona fide, actual, present practical need for a declaration regarding the ownership and control of the GCC Entities and Great Circle.

60. Pursuant to the Purchase Agreement, Providence is the 75% owner of the GCC Entities, and thereafter became the Manager of Great Circle and the GCC Entities.

61. Any party taking or directing action on behalf of the GCC Entities has done so without the consent of Providence and without any actual corporate authority, and such actions are *void ab initio*.

62. Alternatively, pursuant to the Assignment, Providence is the 75% owner of Great Circle, the Manager of the GCC Entities. Any party who has taken action or directed on behalf of Great Circle as Manager of the GCC Entities, has done so without the consent of Providence and without actual corporate authority, and such actions are *void ab initio*.

63. Nevertheless, Courlas, Needham, and others who have taken control over the operations of Great Circle, the GCC Entities, and the GCC Properties, claim the Purchase Agreement is somehow "null and void" or was "aborted."

64. An actual controversy exists for which necessary and proper relief may be granted by declaratory judgment.

65. This declaration requested herein deals with a present, ascertained or ascertainable state of facts, or a present controversy as to a state of facts.

66. Providence has a present *bona fide* need for a declaration as to its rights under the Purchase Agreement, Assignment, and other related documents, and the right to control the GCC

11

Entities' actions in these bankruptcy cases, including prosecuting these Chapter 11 cases, are dependent upon such a declaration.

67. The GCC Entities and Great Circle have, or reasonably may have, an actual, present, adverse and antagonistic interest in this Court's determination that Providence owns and/or controls Great Circle and the GCC Entities.

68. There are no other parties known to have an interest in this determination other than the parties to this proceeding.

69. The antagonistic and adverse interest of all is before this Court by proper process.

70. The declaratory relief sought would not amount to the giving of legal advice by this Court, nor would it answer questions propounded from curiosity.

71. All conditions precedent, to initiating and maintaining this proceeding, have been performed, have occurred, or have been waived.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendants (i) declaring that Providence is the majority owner and party in control of the GCC Entities; (ii) declaring that, at a minimum, Providence is the majority owner of Great Circle, who in turn is the Manager of the GCC Entities, thereby entitling Providence to control over the GCC Entities; (iii) awarding attorney fees and costs to Providence in connection with this proceeding pursuant to the Purchase Agreement; and (iv) granting such other and further relief as is just and appropriate.

### COUNT II
### INJUNCTIVE RELIEF

72. Providence hereby incorporates and realleges paragraphs 1 through 56 as if fully restated herein.

73. This is an action for injunctive relief against Defendants, Courlas, Needham, and Thorburn.

74. Providence performed its obligations under the Purchase Agreement by, among other things, paying a $200,000 deposit, making the additional $900,000 payment at closing, and assuming control and management of Great Circle, the GCC Entities, and the GCC Properties.

75. Providence also tendered payment of the remaining $1,100,000 due under the Purchase Agreement, but that payment was rejected in conjunction with the attempts by Courlas and Thorburn to renegotiate the terms of the Purchase Agreement.

76. Providence obtained legal authority, ownership and possession of the GCC Properties by virtue of its performance under the Purchase Agreement.

77. Needham, Courlas and Thorburn, as well as entities under their ownership and control, had direct knowledge of the transfer of rights to Providence, and consented to such transfer, pursuant to the Purchase Agreement.

78. Nevertheless, Needham, Courlas, and Thorburn, or entities under their ownership and control, continue to interfere with the ownership and management rights of Providence and those acting at the direction of Providence, including prosecution of the Bankruptcy Cases, for the personal self-interest of Courlas and Thorburn, among others.

79. Providence has no adequate remedy at law if the Defendants are not temporarily and permanently enjoined from engaging in the conduct set forth herein.

80. Providence risks suffering irreparable harm if Defendants' do not cease their interference in Providence's management rights. Continued prosecution of the Bankruptcy Cases at the direction of Courlas and Thorburn, for their own self-interest and in the face of the Defendants' retention of the benefits of the Purchase Agreement, but rejection of its obligations, will result in harm to Providence and creditors, including, as proposed in the plan of

reorganization, the transfer of valuable equity in GCC-Chase and GCC-Courtyard for inadequate consideration.

81. The threatened injury to Providence outweighs any potential damages the requested relief may cause the Defendants, if any, and awarding injunctive relief in this case will not adversely affect the public interest.

82. Plaintiff is therefore entitled to a preliminary injunction requiring Defendants, and any one acting under their direction or control, to cease interference with Providence's legal right to manage Great Circle, the GCC Entities, and the GCC Properties, including cessation of all actions on behalf of the Putative Debtors in prosecuting the Bankruptcy Cases.

83. Plaintiff is entitled to a permanent injunction, upon resolution on the merits, requiring the Defendants, and any one acting under their direction or control, to cease interference with Providence's legal right to manage the Great Circle, the GCC Entities, and the GCC Properties, including cessation of all actions on behalf of the Putative Debtors in prosecuting the Bankruptcy Cases.

84. Defendants should further be required to execute and deliver such documents as are necessary to effectuate the intent of the parties and satisfy the Defendant's obligations under the Purchase Agreement

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendants (i) enjoining all actions by the Defendants that would interfere with Providence's legal right to manage Great Circle, the GCC Entities, and the GCC Properties, including cessation of all actions on behalf of the Putative Debtors in prosecuting the Bankruptcy Cases for the Defendants' self-interest; (ii) awarding attorney fees and costs to Providence in connection with this proceeding pursuant to the Purchase Agreement; and (iv) granting such other and further relief as is just and appropriate.

Dated: May 4, 2016                                **SHUMAKER LOOP & KENDRICK, LLP**

                                          By: /s/ David M. Grogan
                                                David M. Grogan, Esq.
                                                N.C. Bar No. 19570
                                                dgrogan@slk-law.com
                                                101 S. Tryon Street, Suite 2200
                                                Charlotte, NC 28280
                                                Phone: (704) 375-0057

                                                Steven M. Berman, Esq.
                                                Fla. Bar No.: 856290
                                                sberman@slk-law.com
                                                Seth P. Traub, Esq.
                                                Fla Bar. No. 022088
                                                straub@slk-law.com
                                                *pro hac vice admission pending*
                                                101 E. Kennedy Blvd., Suite 2800
                                                Tampa, Florida 33602
                                                Phone (813) 229-7600


                                     **BAKER, DONELSON, BEARMAN,**
                                     **CALDWELL & BERKOWITZ, P.C.**

                                    By: /s/ R. Andrew Hutchinson
                                      R. Andrew Hutchinson
                                      N.C. Bar# 46764
                                      100 Med Tech Parkway, Suite 200
                                      Johnson City, Tennessee 37604
                                      Telephone: (423) 928-0181
                                      Facsimile: (423) 928-5694
                                      dhutchinson@bakerdonelson.com

                             -and-

                                      /s/ Bryan E. Busch
                                      BRYAN E. BUSCH*
                                      Georgia State Bar No. 006055
                                      1600 Monarch Plaza
                                      3414 Peachtree Street, NE
                                      Atlanta, Georgia 30324
                                      Telephone: 404.443.6770
                                      Facsimile: 404.238.9627
                                      bbusch@bakerdonelson.com
                                      *To be admitted Pro Hac Vice*